UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-394-MOC-WCM

| | |
|---|---|
| LOUIS GIBSON,<br><br>Plaintiff, pro se,<br><br>v.<br><br>GILES CHEMICAL CORPORATION,<br><br>Defendant. | ORDER |

This matter comes before the Court on Defendant's Motion to Dismiss or, alternatively, Motion to Stay and Compel Arbitration. (Doc. No. 9). Defendant filed the Motion on February 24, 2021. Plaintiff, currently proceeding *pro se*, filed a Response on March 11, 2021, and Defendant filed a Reply on March 19, 2021. Thus, this matter is ripe for disposition. Also pending is Plaintiff's Motion for Summary Judgment, (Doc. No. 15), filed on April 5, 2021.

I. BACKGROUND

Premier Magnesia is a global market leader in magnesia-based products. The Giles Chemical Division is the largest producer of Epsom Salt in North America. https://www.premiermagnesia.com/about-premier (accessed February 22, 2021).

Plaintiff commenced his employment with the Giles Chemical Division of Premier Magnesia on August 17, 2016. (Doc. No. 10-1, Declaration of Tim Williams). As a condition of his employment, during his orientation on August 11, 2016, Plaintiff executed an Employment, Confidential Information and Invention Assignment Agreement (the "Agreement"), a copy of which is attached to Defendant's Motion. (Doc. No. 9-1; See also Doc. No. 10-1, Declaration of Tim Williams). Under the terms of the Agreement, Plaintiff agreed that "any dispute, claim or

controversy concerning [his] employment or the termination of [his] employment… shall be settled by arbitration to be held in Philadelphia, Pennsylvania in accordance with the rules then in effect of the American Arbitration Association." (Agreement at 4).

On December 28, 2020, Plaintiff filed the present lawsuit, alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; under 5 U.S.C. § 2302 (statute prohibiting certain personnel practices); and under "all federal laws that governs Racial Discrimination and Sexual Harassment." (Doc. No. 1 at 3). Plaintiff then described the purported harassment that he endured while working for Premier Magnesia, thus asserting a "dispute, claim or controversy concerning [his] employment or the termination of [his] employment." As such, Defendant asserts that Plaintiff's claims should be brought in arbitration under the rules in place for employment arbitrations through the American Arbitration Association.

Plaintiff responds by making three main arguments: (1) he did not know he was signing an arbitration agreement because it was represented as a confidentiality agreement by Defendant's Human Resources Director, (2) the agreement he signed said "confidentiality agreement" at the bottom of each page, not "arbitration agreement," and (3) he is not able to afford the cost of arbitration. (See Doc. No. 12 at 2-3).

II. DISCUSSION

Under the Federal Arbitration Act, federal and state courts are obliged to honor and enforce agreements to arbitrate. Vaden v. Discover Bank, 556 U.S. 49 (2009). The FAA provides, in pertinent part, that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The law is clear that employment discrimination claims are arbitrable and

that the provisions of the Federal Arbitration Act (FAA) apply to compel arbitration. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001) (ordering arbitration of the plaintiff's state law claims of employment discrimination). Furthermore, arbitration is favored in modern jurisprudence and the FAA manifests "a liberal federal policy favoring arbitration agreements." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002). Any ambiguities as to the scope of the arbitration clause must be resolved in favor of arbitration. Id.

In the Fourth Circuit, a litigant can compel arbitration if the following criteria are met: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute. Adkins, 303 F.3d at 500–01 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). If these elements are satisfied, then a district court has no choice but to compel arbitration. Id. at 500.

In making a claim that arbitration will be too costly, a plaintiff must present sufficient evidence of (1) the cost of arbitration; (2) his ability to pay; and (3) the difference in cost between arbitration of his dispute and litigation. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90–92 (2000). A fee-splitting provision can render an arbitration agreement unenforceable if, under the terms of the provision, an aggrieved party must pay arbitration fees and costs "that are so prohibitive as to effectively deny the employee access to the arbitral forum." Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 554 (4th Cir. 2001) (citing Green Tree, 531 U.S. at 90). Courts analyze issues regarding prohibitive arbitration costs on a case-by-case basis, focusing on a number of factors that include the fees and costs of arbitration, the claimant's ability to pay, the value of the claim, and the difference in cost between arbitration and litigation. Muriithi

3

v. Shuttle Exp., Inc., 712 F.3d 173, 181 (4th Cir. 2013). Arbitration cannot be compelled when arbitral costs are so high that they effectively preclude a litigant from vindicating his federal statutory rights in an arbitral forum. See Green Tree, 531 U.S. at 90 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) (claims arising under a federal statute "may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its functions'"). However, a party seeking to invalidate an arbitration agreement on these grounds will not be permitted merely to allege the likelihood of incurring prohibitive arbitration costs, but must establish the likely existence of such costs with firm proof. Muriithi, 712 F.3d at 181; In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 286–87 (4th Cir. 2007).

In the instant case, Plaintiff clearly entered into an arbitration agreement with Defendant and all of the elements required to compel arbitration appear to be met. See Adkins, 303 F.3d at 500–01. The parties entered into the Agreement as part of the employment relationship. The Agreement contains an arbitration provision that covers this employment dispute. There is no question that Premier Magnesia is involved in interstate commerce, as it is the largest Epsom Salt producer in North America. And, finally, Plaintiff failed to arbitrate this dispute, choosing instead to file his employment-related claims in federal court.

Plaintiff's arguments for why arbitration should be not compelled are unavailing. First, Plaintiff alleges that he did not know that he was signing an arbitration agreement because Defendant's human resources director told him and several others that they were signing a confidentiality agreement. His argument is similar to that made by the *pro se* plaintiff in Foster v. Carrols Corporation, where the plaintiff, while pursuing claims for age and gender discrimination, argued that Carrols "failed to make full disclosure of [the] nature and import of the material to the

4

Plaintiff at the time of presentation to sign the Arbitration Agreement." No. 1:17-cv-00128-MR-DLH, 2018 WL700806, at *2 (W.D.N.C. Feb. 2, 2018). Here, despite the "any and all employment claims" language in the Agreement, Plaintiff argues that had he known that the Agreement would cover his present claims, he would not have accepted employment in 2016. As this court noted in Foster, a party signing a written agreement has a duty to inform himself of the contents before executing it and that, absent fraud or overreach, he will not be allowed to impeach the effect of the contract by claiming he was ignorant of its contents or failed to read it. Id. (citing Syndor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 306 (4th Cir. 2001)).

Plaintiff also attempts to argue that the Agreement he signed states that at the bottom of each page that it is a "Confidentiality Agreement." Therefore, Plaintiff contends there is no agreement to arbitrate his Title VII claims. This argument is unavailing. The Agreement he signed is actually titled "*Employment*, Confidential Information and Invention Assignment Agreement" or in shorthand a "Confidentiality Agreement." (The Agreement (emphasis added)). Thus, the Agreement clearly indicates that it addresses the terms and conditions of Plaintiff's employment as well as the attendant confidentiality requirements. The very first paragraph of the Agreement indicates that Plaintiff's employment was at-will. The Agreement further addresses moonlighting. (The Agreement at 2). The Agreement also contains a Covenant Not To Compete, which is commonly found in employment agreements. (Id. at 3). Despite Plaintiff's claims otherwise, the Agreement is clearly an employment agreement.

Plaintiff also attempts to argue that because the Arbitration and Equitable Relief paragraph does not explicitly list Title VII claims, such claims do not come within the arbitration provision of the Agreement. The arbitration provision's language, which is clear and unambiguous, states that "any dispute, claim or controversy concerning [his] employment or the termination of [his]

5

employment" would be settled at arbitration under the rules of the American Arbitration Association. This language means that any dispute, claim, or controversy concerning Plaintiff's employment would include his Title VII claims, the facts of which very clearly concern his employment and the termination of his employment.

Finally, and most convincingly, Plaintiff raises his financial situation as a reason to continue in a federal court and not proceed with arbitration in Philadelphia, Pennsylvania. According to the arbitration provision, Plaintiff would have to travel from North Carolina to Pennsylvania and would have to share half the cost of an arbitrator, as well as the cost of his own representation. (Agreement at 4). Notably, Plaintiff is currently proceeding *pro se* and *in forma pauperis*. (See Doc. No. 2). The Court finds it concerning and likely that forcing Plaintiff to arbitrate may be financially prohibitive for Plaintiff. However, the Court also takes notice of the fact that Defendant will waive the provision requiring arbitration to take place in Pennsylvania and agrees to arbitrate in Asheville, North Carolina, since that would be convenient for Plaintiff. Nevertheless, the Court is concerned that forcing Plaintiff to pay half the cost of the arbitrator may still be too financially burdensome for Plaintiff.

Even though the Court has these concerns, Plaintiff has failed to present any evidence regarding two of the three Green Tree factors, namely the cost of arbitration and the difference in cost between arbitration of his dispute and litigation. See Muriithi, 712 F.3d at 182 (dismissing arguments regarding prohibitive arbitration costs because plaintiff failed to establish most basic element of the challenge–the costs of arbitration–and failed to provide evidence of the value of his claim, which is a critical factor in prohibitive costs analysis). Accordingly, the Court cannot conclude at this time that arbitration would be financially prohibitive to Plaintiff.

Since none of Plaintiff's arguments are availing, the Court has no choice under the law but to grant Defendant's Motion to Stay and Compel Arbitration. However, the Court's decision to grant this motion is conditional based on the cost of arbitration not becoming prohibitive. To that end, the Court will leave open the possibility of Plaintiff submitting evidence of the cost of the arbitration process and how that cost would differ from the cost of litigation.

### III. CONCLUSION

This Court **GRANTS** Defendant's Motion to Stay the Proceedings and Compel Arbitration. (Doc. No. 9). The parties shall file a status update fourteen (14) days before the beginning of arbitration proceedings detailing the likely cost of arbitration to Plaintiff. To this extent, Plaintiff's Motion for Summary Judgment, (Doc. No. 15), is **DENIED** at this time, without prejudice to Plaintiff to refile his motion at a later date if the parties do not end up adjudicating this action through the arbitration process.

Signed: April 20, 2021

Max O. Cogburn Jr.
United States District Judge

7

Case 1:20-cv-00394-MOC-WCM   Document 17   Filed 04/20/21   Page 7 of 7